UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BONNIE DONOHUE
O/B/O B.G.,

                          Plaintiff,

v.                                                      CASE # 18-cv-01412

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>600 North Bailey Ave<br>Suite 1A<br>Amherst, NY 14226 | KENNETH R. HILLER, ESQ.<br>KELLY ELIZABETH LAGA<br>SCIANDRA, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | DENNIS J. CANNING, ESQ.<br>FRANCIS D. TANKARD, ESQ<br>KRISTIN EVERHART, ESQ.<br>REBECCA HOPE ESTELLE, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the Plaintiff's motion for judgment on the administrative record is GRANTED, Defendant's motion is DENIED, the decision of the Commissioner be

REVERSED, and this matter be REMANDED for further administrative proceedings consistent with this order.

## I.  RELEVANT BACKGROUND

### A.  Factual Background

B.G. was born on June 11, 2001, and was 11 years old at the time of the application. (Tr. 130, 599). He had just turned 17 at the time of his most recent hearing in June 2018. (Tr. 612). Generally, Plaintiff alleges B.G.'s disability consists of attention deficit disorder and oppositional defiance disorders. (Tr. 161). The alleged disability onset date is January 2, 2010[1]. (Tr. 122).

### B.  Procedural History

On October 9, 2012, Plaintiff protectively filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act on B.G.'s behalf (Tr. 128-35). Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On May 14, 2014, Plaintiff appeared before the ALJ, Bruce Mazzarella. (Tr. 37-72). On August 5, 2014, ALJ Mazzarella issued a written decision finding Plaintiff not disabled under the Social Security Act. (Tr. 16-36). On January 20, 2016, the Appeals Council ("AC") denied Plaintiff's request for review. (Tr. 1-6). Thereafter, Plaintiff initiated a claim in the United States District Court of the Western District of New York, which remanded for further proceedings. (Tr. 650-664).

Plaintiff and B.G. appeared at a remand hearing on June 29, 2018, before ALJ Maria Herrero-Jaarsma. (Tr. 605-628). ALJ Herrero-Jaarsma issued an unfavorable decision on August 14, 2018. (Tr. 582-604).

### C.  The ALJ's Decision

---

[1] SSI benefits are not payable prior to the month following the month in which the application was filed. *See* 20 C.F.R. 416.335.

Generally, in her decision, ALJ Herrero-Jaarsma made the following findings of fact and conclusions of law:

1. The claimant was born on June 11, 2001. Therefore, he was a school-age child on October 9, 2012, the date application was filed, and is currently an adolescent (20 CFR 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since October 9, 2012, the application date (20 CFR 416.924(b) and 416.971 et seq.).

3. The claimant has the following severe impairments: Attention Deficit Hyperactivity Disorder (ADHD), Oppositional Defiant Disorder (ODD), Bilateral Hearing Loss secondary to abnormalities with tympanic membrane and middle ear function, and status post bilateral tympanoplasties (20 CFR 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).
    (a) The claimant has less than marked limitation in acquiring and using information.
    (b) The claimant has less than marked limitation in attending and completing tasks.
    (c) The claimant has marked limitation in interacting and relating with others.
    (d) The claimant has no limitation in moving about and manipulating objects.
    (e) The claimant has less than marked limitation in the ability to care for himself.
    (f) The claimant has less than marked limitation in health and physical well-being.

6. The claimant has not been disabled, as defined in the Social Security Act, since October 9, 2012, the date the application was filed (20 CFR 416.924(a)).

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes essentially two arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ's determination was based on an incomplete record, resulting in a finding not supported by substantial evidence. (Dkt. No. 8 at 16 [Pl.'s Mem. of Law]). Second, the ALJ failed to properly evaluate functioning in the domains of attending and completing tasks and acquiring and using information. (Dkt. No. 8 at 22).

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues the record was sufficient for the ALJ to make her determination. (Dkt. No. 17 at 19 [Def.'s Mem. of Law]). Second, substantial evidence supports the ALJ's determination that Plaintiff's impairments did not functionally equal a listing. (Dkt. No. 17 at 22).

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.** **Standard to Determine Disability**

To be "disabled" within the meaning of the Act, a child must show he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations," and which either lasts or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(I).

A three-step sequential evaluation process determines whether a supplemental security income claimant under the age of 18 is disabled. 20 C.F.R. § 416.924(a). At the first step, the ALJ determines whether the child has engaged in substantial gainful activity during the relevant period. 20 C.F.R. § 416.924(b). If so, the child is not disabled; if not, the evaluation continues to the next step. At the second step, the ALJ determines whether the child has a "severe" impairment, or combination of impairments – i.e., a slight abnormality or combination of slight abnormalities that

causes more than minimal functional limitations. 20 C.F.R. § 416.924(c). If not, the ALJ denies the application; otherwise, the evaluation continues.

At step three of the sequential evaluation process, the ALJ determines whether a child's impairments meet, medically equal, or functionally equal the severity of one of the Commissioner's listed impairments (Listings). 20 C.F.R. §§ 416.924(a), (d). If not, the child is not disabled. 20 C.F.R. § 416.924(d). As part of the step three analysis, if the ALJ finds that a child's impairments do not meet or medically equal a listed impairment, the ALJ assesses all functional limitations using six "domains" of functioning to determine whether the child's symptoms are functionally equivalent to the listed impairments. 20 C.F.R. § 416.926a. The six domains of functioning include: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). The evaluation of age-appropriate functioning within each domain focuses on the child's abilities and limitations; where the child has difficulty; the quality of any limitations; and the kind, extent, and frequency of help that the child needs. 20 C.F.R. § 416.926a(b)(2). A finding of functional equivalence occurs when a child has an "extreme" limitation in one of the six domains of functioning or "marked" limitations in at least two domains. 20 C.F.R. § 416.926a(e).[2]

## IV. ANALYSIS

### A. Substantial Evidence

---

[2] "Extreme" means a child has an impairment that very seriously interferes with a child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e). "Marked" indicates that he or she has an impairment that seriously interferes with the ability for independently initiating, sustaining, or completing activities. *Id*.

6

Plaintiff argues that the ALJ's findings regarding functional equivalence are not supported by substantial evidence. (Dkt. No. 8 at 22). More specifically, Plaintiff argues that the ALJ should have found marked limitations in the domains of acquiring and using information and attending and completing tasks. She also argues that missing records from the school and Spectrum Health Services prevented the ALJ findings from being based on substantial evidence.

1. **Evidentiary Gap**

Due to the procedural history of this case, there was a lapse of four years between hearings. The first hearing was held in May 2014 and the remand hearing was in June 2018. The order from the Appeals Council in September 2017 directed the ALJ to obtain additional evidence concerning Plaintiff's impairments in order to complete the administrative record. (Tr. 662). Unfortunately, at the time of the ALJ's decision, the Plaintiff's school records had not been updated. The rules provide that functional equivalence is considering function during all activities, including everything at home, at school and in the community. 20 CFR 416.926a(b). Given the nature of Plaintiff's alleged impairments, testimony of continued special education services in a highly structured setting, and a few recent school records which showed failing grades with numerous disciplinary infractions, it is imperative the ALJ review updated school records when considering functional equivalency.

"The ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings, regardless of whether the claimant is represented by counsel." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted); *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Plaintiff's counsel had ample time to secure additional evidence and was in a better position to know what evidence was needed but an ALJ's duty to ensure a complete record is not delegable, and although lessened when a party is represented, it is not altogether discharged. *See*

*Claypool v. Berryhill*, Case No. 16-CV-6195-CJS, 2018 WL 3386337, *2 (W.D.N.Y. 2018) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 11874 (2nd Cir. 1998).

The last Individualized Education Plan ("IEP") in the record is from the 2013-2014 school year and the only behavior plan in is from 2012. Contrary to the Commissioner's argument, two weeks before the hearing, Plaintiff's counsel notified the ALJ that there were outstanding records, including Plaintiff's school records, and detailed when they were requested. (Tr. 781). At the hearing, Plaintiff's counsel stated those records remained outstanding and there was no expectation of receiving the school records because it was summer vacation. (Tr. 626-627). There was additional discussion between the ALJ, counsel, and Plaintiff about what school the child was attending. There was also testimony about poor school performance and continued special education services. (Tr. 613-614, 617, 622, 625-627).

Plaintiff's counsel was able to submit eight pages of school records prior to the hearing which related to the current school year. (Tr. 847-855). The 2017-2018 third quarter report card reflected failing grades for the majority of subjects since the beginning of the year. (Tr. 848). A behavior report from the 2017-2018 school year showed multiple short-term suspensions and one long-term suspension, for actions such as inciting disturbance, disrespectful behavior, sexual harassment of school staff, defiance of authority/insubordination, and verbal or physical threat to a student. (Tr. 849-852). The Commissioner's argument that the record was adequate, and no further development was needed because there were already school records from 2012 through 2014 is not persuasive. The statement by the Commissioner that the record shows "significant improvement with medication management and mental health counseling" is clearly contradictory to the few update records that were received. (Dkt. No. 17 at 19-20). As noted previously, school functioning is an important factor to be considered in a functional equivalency analysis. The only

evidence upon which the ALJ relied was B.G.'s seventh grade records. At the time of the hearing, B.G. had just completed eleventh grade, a gap of four years which is significant given the self-contained classroom and highly structured setting with continued behavior problems and failing academic achievement.

Again, although the Plaintiff's representative could have done more to obtain the school records, the Court has remanded in similar cases where there was a glaring gap in the record regardless of representation. *See Warden v. Berryhill*, No. 17-CV-1310-A, 2019 WL 2865035, at *3 (W.D.N.Y. July 3, 2019)(a decision based on incomplete medical documentation was not supported by substantial evidence); *Cunningham v. Berryhill*, No. 18-CV-463, 2019 WL 4154483, at *6 (W.D.N.Y. Sept. 3, 2019)("In light of the non-adversarial nature of benefits proceedings, where there is a gap in the record, the ALJ must affirmatively develop evidence to fill it"). The IEPs, potentially additional psycho-educational testing, report cards, teacher evaluations, and behavior reports would offer evidence for the four-year gap and indicate what improvement was seen in Plaintiff's functioning at school and in the community. Remand is necessary because there is a substantial gap in the educational records and the ALJ did not fulfill her duty by making "every reasonable effort" to fill that gap under 20 C.F.R. §§ 404.1512(d)(1), 416.912(d)(1). *Blackman v. Berryhill*, No. 1:16-CV-00869, 2018 WL 3372963, at *3 (W.D.N.Y. July 11, 2018).

Plaintiff also asserts there were significant gaps with treatment records from Spectrum Health Services. Although remand has already been found necessary, it is noted that there is a distinction between the educational records and these mental health records. The record included summaries of counseling sessions at Spectrum Mental Health throughout the entire relevant period and a new consultative psychiatric evaluation. (Tr. 792-846, 787-790). Plaintiff's counsel also did not address these missing records at the hearing. Therefore, as it pertains to the Spectrum Mental

Health records, the Commissioner is correct that "[t]he ALJ is not required to develop the record any further when the evidence already presented is 'adequate for [the ALJ] to make a determination as to disability.'" *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)); see also 20 C.F.R. § 416.920b.

### B. Teacher Opinion in Acquiring and Using information

In finding B.G. had a less than marked limitation in acquiring and using information, the ALJ discussed evidence from the consultative examiners, therapy records, IEPs, and the teacher opinion from Ms. Kiblin. (Tr. 592). This case was previously remanded with instruction to "evaluate all of the evidence of record, including the opinion of Mary Kiblin, dated April 4, 2014." (Tr. 662). On that date, Mary Kiblin, B.G.'s 7th grade special education teacher, filled out a teacher questionnaire. (Tr. 234-241). She had taught him for all classes for the past 7 months in an 8:1:1 setting. (Tr. 234). In the domain of "acquiring and using information" Ms. Kiblin opined that B.G. had "a serious problem" regarding understanding and participating in class discussions, providing organized oral explanations and adequate descriptions, presenting ideas in written form, and applying problem-solving skills in class discussions. B.G. had "an obvious problem" reading and comprehending written material, comprehending and doing math problems, learning new material, and recalling and applying previously learned material. B.G. had no problem comprehending oral instructions or understanding school and content vocabulary. Ms. Kiblin added the following narrative:

> [BG] doesn't participate in class discussions and will read aloud when given prior notice and a short passage. It's hard to get a handle on his skills due to his unresponsiveness when attempts are made to engage him in conversation.

(Tr. 235).

In her decision, the ALJ gives "moderate weight" to the opinion from Ms. Kiblin, properly acknowledging she is not an acceptable medical source but observes B.G.'s behavior and progress in school daily. (Tr. 590). *See* SSR 06-03p, 2006 WL 2329939 (August 9, 2006) (noting that information from "other sources," including teachers, are "valuable sources of evidence for assessing impairment severity and functioning," and that the ALJ "generally should explain the weight given to opinions from [ ] 'other sources' "). In the analysis of the domain, the ALJ states Ms. Kiblin indicated serious problems in several tasks, as well as reiterated part of the narrative referenced above. The ALJ also notes the IEP provides for integrated teaching in a "highly structured classroom" but Plaintiff continues to perform academically below expectations. (Tr. 590). The severity rating language on the form completed by the teacher tracks that of the regulations, with choices for "a serious problem" and "a very serious problem" available for each listed characteristic being rated. Ms. Kiblin opined "a serious problem" in four of the ten activities and an "obvious problem" in another four. The ALJ concluded without any elucidating explanation why those serious problems were not supportive of a marked limitation. The SSR is clear that there is a "whole child" approach for determining functional equivalency and that the rating of limitation of a domain is not an "average" of what activities the child can and cannot do. *See* SSR 09-1p 2009 WL 396031 (February 17, 2009).

The ALJ also does not appear to have accounted for the structured academic setting. The "Commissioner's regulations require the ALJ to consider the effects of a structured or highly supportive setting ... on the claimant's functioning and, if the claimant's symptoms or signs are controlled or reduced by the structured environment, the ALJ is required to consider the claimant's functioning outside of the highly structured setting." *Smith v. Massanari,* No. 00–CV–0402, 2002 WL 34242375, at *6 (W.D.N.Y. Mar. 17, 2002) (citing 20 C.F.R. § 416.924c); *see also Straw v.*

11

*Apfel,* No. 98 Civ. 5089, 2001 WL 406184, at *6 (S.D.N.Y. Apr.20, 2001). School records show B.G. was in highly restrictive, self-contained classroom with an 8:1:1 ratio. (Tr. 141-142, 223-233). The ALJ referenced "highly structured setting" but failed to properly reconcile this accommodation with the conclusion of less than marked limitations. *See Leonard ex rel. A.J. v. Astrue*, No. 09-CV-029 TJM/VEB, 2011 WL 7090710, at *7 (N.D.N.Y. Nov. 3, 2011), *report and recommendation adopted*, No. 1:09-CV-00029, 2012 WL 209145 (N.D.N.Y. Jan. 24, 2012). Recent evidence reveals that despite the highly structured setting, B.G. is unable to achieve passing grades. (Tr 848). This is also related to the previous argument about what the gap in school records may have revealed regarding B.G.'s academic achievement and functioning in this domain through middle school and high school.

This Court cannot say that the evidence in the record as a whole definitively supports at least a marked limitation, but the ALJ failed to provide the requisite explanation to enable review of whether her finding in the domain was supported by substantial evidence. Although this Court must accept the ALJ's reasonable interpretation of evidence, the ALJ has not provided any explanation suggesting how a reasonable fact-finder could interpret this opinion as supportive of a less than marked, rather than marked, limitation in the domain of acquiring and using information, particularly when read with the IEP showing the need for a highly structured and restrictive setting. *See Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 173 (N.D.N.Y. 2010)("The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.' ") (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)). A review of the ALJ's decision shows the ALJ did not provide adequate explanation from which this Court can determine whether her findings related to this domain are supported by substantial evidence. This lack of explanation is material to the outcome in this case, as a finding of greater

limitation in this domain would have resulted in a finding that B.G. functionally equals the Listings.

As set forth above, Plaintiff also contends the ALJ's decision related to the domain of attending and completing tasks was not supported by substantial evidence. However, because the court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary the Court declines to reach that issue. *Morales v. Colvin*, No. 13-CV-06844 (LGS)(DF), 2015 U.S. Dist. LEXIS 58246, at *80 (S.D.N.Y. Feb. 10, 2015) (The court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 U.S. Dost. LEXIS 58203 (S.D.N.Y. May 4, 2015). However, many of the arguments and analysis are parallel between that domain and acquiring and using information domain that was discussed above.

**ACCORDINGLY, it is**

    **ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is **GRANTED**; and it is further

    **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 17) is **DENIED**; and it is further

    **ORDERED** that this matter is **REMANDED** for further proceedings, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: March 31, 2020  
Rochester, New York

*J. Gregory Wehrman*  
HON. J. Gregory Wehrman  
United States Magistrate Judge